In re COASTAL PETROLEUM
CORPORATION, Debtor.

COASTAL PETROLEUM
CORPORATION,
Plaintiff,

v.

SECOND MEDINA CORPORATION,
Defendant.

Bankruptcy No. B85–00594.
Adv. No. B92–1206.

United States Bankruptcy Court,
N.D. Ohio, E.D.

June 3, 1992.

See also 91 B.R. 35.

Richard G. Hardy, Cleveland, Ohio, for plaintiff.

Kathryn A. Belfance, Akron, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this adversary proceeding, the Plaintiff–Debtor Coastal Petroleum Corporation (Coastal) seeks compensatory and punitive damages for an alleged breach of contract and conversion committed by the Defendant Second Medina Corporation (SMC) relative to a certain agreement executed between these parties on November 30, 1988.

Coastal, a Nevada Corporation, was incorporated in 1981 as the successor-in-interest to two corporations known, respectively, as D.D.C., Inc. and Circle Oil and Gas, Inc. Its principal business is the drilling and operation of oil and gas wells drilled and developed in the states of Ohio, Kansas and Pennsylvania. The wells developed by Coastal are owned by various investors who purchased undivided percentage interests in the wells. The investors are comprised of individuals, partnerships and other entities formed to purchase interests in the wells. (See, Disclosure Statement, filed June 20, 1988).

As a result of difficulties experienced while attempting to restructure its debt outside of bankruptcy, Coastal caused to be filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 11, 1985 and continued its business operations as a debtor, debtor-in-possession. Eventually, Coastal filed a plan of reorganization which was confirmed on No-

vember 30, 1988, as amended, subject to reconsideration after one year of consummation. Subsequently, on March 22, 1989, upon request for modification, a second amended plan of reorganization was confirmed by the Court.

Post-confirmation, on November 30, 1988, Coastal and SMC entered into an agreement as an effort to resolve a certain dispute which existed between Coastal and SMC's predecessors-in-interest relative to, *inter alia*, issues of ownership of property, operation royalties, real estate taxes, and certain monetary damages arising from Coastal's operation of certain oil and gas wells.

In its Complaint, Coastal alleges (1) this is a core proceeding under 28 U.S.C. § 157; (2) that the Court authorized Coastal to enter into the agreement on April 7, 1989; (3) since December 1, 1990, in contravention of the agreement, SMC has prohibited Coastal and its agents from entering the subject property to operate the oil and gas wells located thereon; (4) that Coastal has fully performed the conditions it was obligated to perform under the agreement; (5) that SMC has breached the agreement by its conduct which prohibited Coastal from operating certain wells at least until September 30, 1991; (6) that Coastal owned approximately 600 barrels of oil located on the subject property of SMC, which SMC has converted wrongfully to its use and profit; and (7) as a result, Coastal has sustained damages for which it seeks compensation as set forth in its prayer for relief.

In response, SMC filed its motion to dismiss the Complaint asserting the following grounds: (1) the Court lacks subject matter jurisdiction over the proceeding; (2) Coastal asserts a post-confirmation breach of contract action, unrelated to the Chapter 11 case; (3) the claims relating to the lawsuit arose post-confirmation; (4) the action constitutes a non-core proceeding; (5) SMC is entitled to a jury trial; (6) the agreement was not made a part of the confirmed plan; (7) all of the alleged breaches occurred post-confirmation; (8) Coastal's complaint

is based upon state law and, as such, the action should be pursued in the state court.

As subject matter jurisdiction has been challenged as a basis for dismissal of the adversary proceeding, that issue must be addressed, initially. Coastal asserts core matter jurisdiction for its Complaint, while SMC alleges that Coastal's action is a non-core matter.

Under pertinent provisions of 28 U.S.C. § 157, the following is noted:

§ 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. 157(a) and (b)(1).

A non-exclusive listing of matters deemed to be "core" matters are set forth under 28 U.S.C. § 157(b)(2)(A–O). Under 28 U.S.C. § 157(b)(3), it is the bankruptcy judge who is obligated to determine whether a matter is core or non-core, and a determination whether a matter is not a core matter "shall not be made solely on the basis that its resolution may be affected by state law." *Id.* Section 157(c)(1) of Title 28 U.S.Code allows a bankruptcy judge to hear a proceeding that is not a core proceeding but is otherwise related to a case under Chapter 11. As such, the matter is deemed "non-core", and the bankruptcy judge is required to submit proposed findings and conclusions to the district court for entry of a final order or judgment. 28 U.S.C. § 157(c)(1). Where the parties have consented, however, the district court may refer a proceeding related to a case under Chapter 11 to a bankruptcy judge for a hearing and final adjudication, subject to review under 28 U.S.C. § 158. See, 28 U.S.C. § 157(c)(2).

Coastal alleges as a basis for core matter jurisdiction that the dispute upon which the subject agreement was reached arose during the pendency of the Coastal's bankruptcy case pre-confirmation. SMC alleges that the agreement was executed post-confirmation and was never incorporated as a part of the Debtor's plan of reorganization. A resolution of this matter requires the Court to determine whether the Complaint, as alleged, gives rise to a matter related to a case or proceeding which arose under Title 11 of the U.S.Code. In doing so, it becomes necessary to view the subject agreement relative to its position, vis-a-vis, a confirmed plan under Chapter 11.

Section 1141 of the Bankruptcy Code, in relevant part, provides the following:

1141. Effect of confirmation.

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor ... any entity acquiring property under a plan, and any creditor ... whether or not such creditor ... has accepted the plan.

(b) ... [T]he confirmation of a plan vests all property of the estate in the debtor.

Coastal's allegation of its adversary being a core proceeding causes the Court to be mindful of the fact that this Court's authorization of Coastal to enter into the subject agreement with SMC was sought some five months after the agreement had actually been executed between the parties and more than one year after its plan of reorganization had been confirmed. At any rate, both the agreement's execution and the Court's authorization of same occurred post-confirmation while the reorganized Coastal had emerged from bankruptcy and had been revested with its assets. As such, this Court's post-confirmation authorization was entered improvidently and is hereby vacated. Coastal, represented at all times by competent counsel, was fully aware of its post-confirmation status at the time it sought this Court's imprimatur of the subject agreement. Now that SMC, allegedly, has breached certain provisions of that agreement, Coastal, again, seeks post-confirmation intervention of the Bankruptcy Court to accomplish the relief it seeks.

Briefly stated, this breach of contract action is a non-core proceeding and was not addressed as a provision in the confirmed plan. Rather, it is purely a state law contract action. To adopt Coastal's contention regarding continued jurisdiction would render this and any other bankruptcy as continuing, *ad infinitum*, contrary to the provision of § 1141 of the Code. Rule 3020(d), Bankr.R., addresses the extent of the retained power of the Bankruptcy Court following plan confirmation. Therein, the following is noted:

3020(d) Retained Power.

Notwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate. Rule 3020(d), Bankr.R.

The language of the Advisory Committee note to Rule 3020(d), significantly, is more explanative to show that the Court's retained power is not without limits. Specifically, the Advisory Committee note provides:

Subdivision (d) clarifies the authority of the court to conclude matters *pending before it prior to confirmation* and to continue to administer the estate as necessary, e.g., resolving objections to claims. (Advisory Committee note to Rule 3020(d)). (Emphasis added).

As stated above, the agreement between Coastal and SMC was not a pending matter "prior to confirmation." In fact, the agreement clearly was executed post-confirmation and was not the specific subject of a plan provision. Accordingly, the present action is beyond the scope of retention of power addressed under Rule 3020(d). Furthermore, as was articulated by the U.S. Supreme Court, the restructuring of debtor-creditor relations (core matters) must be distinguished from the adjudication of state-created private rights (non-core matters) such as the right to recover contract damages. *See, Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Clearly, this action between Coast-

al and SMC is one involving private rights, as opposed to a public right, with any liability defined under nonbankruptcy law.

In this case, the plan was initially confirmed on November 30, 1988, the same date as the execution of the subject agreement. That plan, as confirmed, makes no reference to nor incorporates the subject agreement. Coastal's argument that the Bankruptcy Court retains "related matter jurisdiction" since the underlying dispute arose during the pendency of the Debtor's case is not well-founded. In fact, the record is silent to reflect where this Court adjudicated either an adversary proceeding or a contested matter regarding a dispute between Coastal and SMC's predecessors-in-interest. The record only reflects that Coastal's predecessors were successful in obtaining relief from stay under § 362(d) in the early days of Coastal's bankruptcy. As no such dispute is reflected in the record, the Court only can look to the execution date of the agreement which achieved an apparent compromise of the parties' respective positions. That agreement, coincidentally, was executed on the same date the Debtor's plan was confirmed. As it is not referenced by or incorporated into the plan, it is not a part of the plan and, apparently, was executed post-confirmation. As such, any recourse available to Coastal should not be the subject of a further bankruptcy proceeding but, rather, a pursuit of its available remedies against SMC under non-bankruptcy law. Further, it is undisputed that the relief sought by Coastal is a state law contract action. As the subject agreement did not arise within the case or a proceeding under Chapter 11 but, rather, occurred post-confirmation at a time when the Debtor was revested with its assets pursuant to § 1141, the Complaint should properly be dismissed, and I so find. In brief, this Court is without the required subject matter jurisdiction, and dismissal is proper.

Additionally, Coastal argues that, without enforcing its rights under the contract, it is doubtful that it will be able to pay its unsecured creditors under the plan. That averment, while undisputed, is insufficient to sustain jurisdiction herein. Firstly, the subject agreement was not a part of the confirmed plan, nor referenced therein. Secondly, under Article II of the plan confirmed on November 30, 1988, the means of execution of the plan was to come from revenues generated from the Debtor's continued business operation—not some ancillary agreement not embodied in the plan. (See, Amended Plan of Reorganization, filed June 20, 1988). Furthermore, Coastal's approved disclosure statement of June 20, 1988, indicates that "the primary source of funds to implement Coastal's plan shall be the disposition of certain of Coastal's assets and cash available to Coastal at confirmation." (See, Disclosure Statement, filed June 20, 1988,) "D. Disposition of Assets and Financing of Plan." Again, those disclosures earlier relied upon are contrary to the position presently asserted by Coastal.[1] Furthermore, the subject agreement is not among executory contracts assumed by the Debtor in its original or modified plan. Additionally, based upon the aforementioned findings, the present action is not one under which this Court has reserved jurisdiction to adjudicate.

Coastal's reliance on the *Salem Mortgage Company* decision (*In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986)) is misplaced. Therein, as here, the Sixth Circuit recognized that some situations which are extremely tenuously connected to the estate would not satisfy the jurisdiction requirement. The matter at bar is one of those situations.

It is further noted that, after four years following confirmation of Coastal's original plan, its unsecured creditors who were to receive a ten percent dividend, have yet to receive a single payment. An appropriate order, under separate cover, will address this observation.

Accordingly, based upon the reasons set forth herein, this Court lacks the requisite

---

**1.** Respecting these particular matters, Coastal's Modified Disclosure Statement dated September 23, 1988, which was approved, is consistent with the approved Disclosure Statement of June 20, 1988.

subject matter jurisdiction. The motion of SMC to dismiss is granted, and the Debtor's Complaint is hereby dismissed.

IT IS SO ORDERED.